NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 251102-U

NO. 4-25-1102

IN THE APPELLATE COURT

FILED
August 13, 2026
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Fulton County |
| KENNETH P. CARPENTIER, | ) | No. 19CF206 |
| Defendant-Appellant, | ) | |
| | ) | Honorable |
| | ) | Bruce C. Beal, |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court.
Presiding Justice Steigmann and Justice Cavanagh concurred in the judgment.

**ORDER**

¶ 1     *Held*: (1) Defendant failed to establish he is entitled to have his case remanded for a second time for a third hearing on his motion to withdraw his guilty plea based on his allegation his postplea counsel on remand failed to strictly comply with the certification requirements found in Illinois Supreme Court Rule 604(d) (eff. Apr. 15, 2024).

(2) Defendant's claim his plea counsel provided ineffective assistance failed because defendant could not establish he was prejudiced by his plea counsel's alleged ineffectiveness.

¶ 2     On July 17, 2023, defendant, Kenneth P. Carpentier, pleaded guilty to the offense of unlawful possession of methamphetamine (720 ILCS 646/60(b)(1) (West 2018)). That same day, the trial court sentenced defendant pursuant to a negotiated plea agreement to a period of two years' probation pursuant to section 70 of the Methamphetamine Control and Community Protection Act (Act) (720 ILCS 646/70 (West 2022)). Section 70(a) of the Act states:

"Whenever any person who has not previously been convicted of any felony

offense under this Act, the Illinois Controlled Substances Act, the Cannabis Control Act, or any law of the United States or of any state relating to cannabis or controlled substances, pleads guilty to or is found guilty of possession of less than 15 grams of methamphetamine under paragraph (1) or (2) of subsection (b) of Section 60 of this Act, the court, without entering a judgment and with the consent of the person, may sentence him or her to probation. A sentence under the Section shall not be considered a conviction under Illinois law unless and until judgment is entered under subsection (e) of this Section." *Id.* § 70(a).

On July 21, 2025, on remand from this court, the trial court denied defendant's motion to withdraw his guilty plea. On October 3, 2025, the trial court entered a written order denying defendant's motion to reconsider. Defendant now appeals for the second time in this case, arguing (1) the trial court erred by denying his motion to withdraw his guilty plea and (2) his postplea counsel on remand failed to strictly comply with the requirements of Illinois Supreme Court Rule 604(d) (eff. Apr. 15, 2024). We affirm.

¶ 3                                I. BACKGROUND

¶ 4        On July 22, 2019, the State charged defendant by information with unlawful possession of methamphetamine (less than five grams of a substance containing methamphetamine) (720 ILCS 646/60(b)(1) (West 2018)). The trial court appointed public defender Nicholas Cotta to represent defendant.

¶ 5        However, defendant later hired attorney Michael Doubet, who filed a motion to suppress evidence obtained during the traffic encounter that led to the charge in this case. Although the motion does not appear to be contained in the record before this court, the State's response, which was filed on May 31, 2022, is in the record. The State's response does not give any

indication about the arguments defendant made in his motion.

¶ 6     On June 7, 2022, the trial court held a hearing on defendant's motion. The defense called Illinois State Police Trooper Josh Ushman as a witness. During his examination by defense counsel, Trooper Ushman offered the following testimony. On July 21, 2019, at around 4:28 p.m., he was on duty in the area around Canton, Illinois, in a police vehicle equipped with video and audio recording equipment. While on patrol, he drove by a vehicle preparing to exit a parking lot. He conducted a registration check on the vehicle and determined its registration was expired. Trooper Ushman performed a U-turn to follow the vehicle. Trooper Ushman also learned the vehicle's owner had a revoked driver's license. At that point, according to Trooper Ushman, he had probable cause to conduct a stop of the vehicle based on the expired vehicle registration.

¶ 7     According to Trooper Ushman, he observed who was driving the vehicle when he passed it. After performing the U-turn, he saw the suspect vehicle had turned into a driveway. The driver was still in the vehicle's driver's seat when Trooper Ushman initiated the traffic stop in the driveway. After speaking with the driver, Trooper Ushman placed the driver under arrest for driving on a revoked license on a public roadway. During a search incident to the arrest, Trooper Ushman found a small container in the driver's pocket containing what the trooper knew, based on his training and experience, to be methamphetamine.

¶ 8     Defense counsel played the recording from Trooper Ushman's vehicle for the trial court. The video was later admitted as defendant's exhibit No. 1.

¶ 9     During the State's examination of Trooper Ushman, he testified the weather was clear on the day in question, his visibility was clear, and he was a trained observer. Moreover, Trooper Ushman testified he observed the registration on the vehicle at issue was expired by more than a month. It was after seeing the expired registration that he tried to initiate a traffic stop on

the vehicle. According to Trooper Ushman's testimony, after the suspect vehicle stopped, he confirmed defendant's driver's license was revoked, and defendant acknowledged that he knew he should not have been driving. Trooper Ushman then placed defendant under arrest, searched his person, and found the methamphetamine.

¶ 10 After Trooper Ushman's testimony, defense counsel argued the trooper did not have a reasonable, articulable suspicion to stop defendant until he actually went into a private driveway. Defense counsel also argued Trooper Ushman's report was not consistent with what the video from his vehicle showed.

¶ 11 In response, the State argued the defense did not meet its burden with regard to its motion to suppress. According to the State, Trooper Ushman presented uncontradicted testimony that he saw the vehicle's registration had expired, which was his basis for stopping the vehicle. In addition, while getting ready to initiate the traffic stop, Trooper Ushman learned through a "soundex" check that the owner of the vehicle had a revoked driver's license.

¶ 12 The trial court denied defendant's motion to suppress. According to the court, Trooper Ushman was an experienced police officer and a trained observer. The court found no conflict between the trooper's report and his testimony. According to the court, the trooper had probable cause to stop defendant's vehicle because of the expired registration. Further, the court stated the video showed defendant getting out of the vehicle, which meant he had just been driving on the public roadway.

¶ 13 At a hearing on October 3, 2022, defendant indicated he wanted to retain a different attorney. As a result, the trial court allowed Doubet to withdraw as defendant's attorney.

¶ 14 On January 3, 2023, the trial court reappointed Cotta to represent defendant.

¶ 15 On July 17, 2023, the State explained the parties had reached a plea agreement.

Pursuant to the terms of the agreement, defendant would plead guilty to possession of methamphetamine in this case, the State would dismiss a charge in traffic case No. 19-TR-1552, and the State would recommend a two-year period of first-offender drug probation. Both defendant and defense counsel indicated this was their understanding of the plea agreement. Defendant acknowledged he had read the terms of the plea agreement, understood everything in the agreement, and understood the rights he was giving up by pleading guilty, including his rights to (1) a speedy trial, (2) confront witnesses against him, (3) compel witnesses to testify on his behalf, (4) decide whether to testify on his own behalf, and (5) require the State to prove his guilt beyond a reasonable doubt. Further, defendant stated he was entering into the plea freely and willingly, with full knowledge of the terms of the plea agreement. Finally, defendant confirmed the State had not made any threats or promises to him, outside the terms of the plea agreement, to induce him to plead guilty.

¶ 16 The State then provided the following factual basis for defendant's plea. According to the State, if the case went to trial, it anticipated Trooper Ushman would testify he was on routine patrol in Canton on July 21, 2019, at around 4:28 p.m. After observing a vehicle with an expired registration, Trooper Ushman initiated a traffic stop. In addition, before stopping the vehicle, the trooper determined the vehicle's registered owner, who was defendant, had a revoked driver's license. When defendant exited his vehicle, the trooper told him why he was being stopped. Trooper Ushman then placed defendant under arrest for driving with a revoked license. Then, incident to the arrest, Trooper Ushman searched defendant and found a glass-like substance in defendant's pocket. This substance later tested positive for methamphetamine.

¶ 17 The trial court found the State's factual basis sufficient for defendant's guilty plea, accepted the parties' plea agreement, and admonished defendant of his appeal rights.

¶ 18    On July 20, 2023, defendant filed a motion to withdraw his guilty plea, which was prepared by Cotta. In the motion, defendant indicated he wanted to withdraw his guilty plea for the following reasons:

"a. Ineffective Assistance of Counsel: The Defendant believes he was not advised and did not understand the possible consequences of a conviction being entered in this case; and

b. The strength of defendant's case has risen since the time the plea has been entered."

¶ 19    On August 17, 2023, the trial court allowed Cotta to withdraw as defense counsel and appointed attorney Whitney Parrish to represent defendant. On October 31, 2023, attorney Parrish filed her Illinois Supreme Court Rule 604(d) (eff. Oct. 19, 2023) certificate of counsel, which stated:

"1. That I was court appointed to represent the Defendant *** in matters related to the above-listed caption on August 17, 2023.

2. That since the date of my appointment, I have consulted with the Defendant *** in person in order to ascertain his contentions of error in the entry of his guilty plea and sentencing.

3. That since the date of my appointment, I have reviewed the court file of this cause contained in the Fulton County Circuit Clerk's Office.

4. That I have examined the prior filings by Counsel on behalf of the Defendant *** and made the necessary changes to said petitions and filing."

¶ 20    On the same day Parrish filed her Rule 604(d) certificate, the trial court held a hearing on defendant's motion to withdraw his guilty plea. Parrish indicated she had spoken with

defendant about the possible ramifications of him testifying at the hearing, and defendant requested she make a proffer instead of him taking the witness stand. The State did not object to the proffer, and the court allowed it. Parrish told the court defendant indicated he wanted to proceed on the grounds of ineffective assistance of counsel and his lack of understanding of the ramifications of his negotiated guilty plea. While defendant's plea did not result in a conviction, counsel stated defendant did not understand the case would show as an active proceeding while he was on probation for the agreed-upon two years. Defendant had applied for a job but was told by the potential employer that he was not eligible for employment because his criminal case was still active. Therefore, counsel indicated defendant wanted to withdraw his plea.

¶ 21 The State called Cotta, who was defendant's plea counsel. Cotta indicated the trial court reappointed him to represent defendant after Doubet withdrew from the case. Cotta testified he explained to defendant both verbally and in a letter how first-offender drug probation, which was what the State offered defendant if he pleaded guilty, worked before defendant entered his guilty plea. Cotta testified:

> "The individuals who are placed in that program are placed on a two-year probationary period where a conviction does not formally enter in the case; however, they are required to abide by certain terms and conditions; most namely, stay out of trouble, don't violate criminal statutes, complete 30 hours of public service work, meet with Probation Department, get a drug and alcohol evaluation, follow through with any recommended treatment, and, I believe, submit to random drug testing. If they successfully complete that, no conviction ever enters. And then subsequently, depending on their criminal history, they could seek to have that expunged."

During her cross-examination, Parrish asked Cotta if he recalled telling defendant that the case would still show as pending on his record during his term of probation. Cotta responded:

"Yes. To the best of my knowledge, what happens is if somebody were to pull—what we call a 'CQH'—but a criminal history, it's gonna show that the charge still appears on their record. It shows that a conviction has not been entered because, again, when you're looking at it, it will just show charges as pending; it shows that somebody is charged with that, but that a conviction would not enter. Yes, I would've advised him that that's the case."

The court denied defendant's motion to withdraw his guilty plea. On January 16, 2024, the court denied defendant's motion to reconsider.

¶ 22 Defendant appealed the trial court's decision. On April 23, 2024, while defendant's appeal was pending, the State filed a petition to revoke defendant's probation. Then, on May 30, 2024, this court entered an order allowing an agreed motion for a summary remand. The cause was "remanded to the circuit court for the filing of a Rule 604(d) certificate, the opportunity to file a new post-plea motion, if counsel concludes that a new motion is necessary, a new hearing on the motion, and strict compliance with the requirements of Rule 604(d)." *People v. Carpentier*, No. 4-24-0152 (May 30, 2024) (order).

¶ 23 On remand, on April 2, 2025, Parrish, on defendant's behalf, filed an amended motion to withdraw defendant's guilty plea. In the motion, Parish indicated she had reviewed the previously filed motion to withdraw defendant's guilty plea and had further consultations with defendant. Parrish asserted the amended motion was being filed to include additional reasons defendant wished to pursue for withdrawing his guilty plea. According to the amended motion, defendant "wishe[d] to withdraw his guilty plea for the following reasons":

"A. Ineffective Assistance of Counsel: The Defendant believes he was not advised and did not understand the possible consequences of entering into a guilty plea and/or a conviction being entered in this case, along with being pressured into entering into said guilty plea and being denied a speedy trial;

B. The Defendant was under the influence of alcohol at the time of his plea and sentencing hearing, and therefore, did not possess the appropriate mindset to comprehend and enter into the guilty plea or sentence; and

C. The strength of Defendant's case has risen since entry of the plea."

¶ 24 Attorney Parrish also filed an amended Rule 604(d) certificate on April 2, 2025, which stated:

"1. That I was court appointed to represent the Defendant *** in matters related to the above-listed caption on August 17, 2023.

2. That since the date of my appointment, I have consulted with the Defendant *** in person and via telephone in order to ascertain his contentions of error in the entry of his guilty plea and sentencing.

3. That since the date of my appointment, I have examined the trial court file and both the report of the proceedings of the plea of guilty and the report of proceedings in the sentencing hearing of this cause contained in the Fulton County Circuit Clerk's Office.

4. That I have examined the prior filings by Counsel on behalf of the Defendant *** and made the necessary changes to said petitions and filing."

¶ 25 On May 8, 2025, the trial court held what was scheduled to be a hearing on defendant's amended motion to withdraw his guilty plea and vacate his sentence. Prior to going

on the record, it appears the court and the parties discussed what the court believed Parrish needed to do before the hearing was held. Parrish stated on the record:

> "It's my understanding that based on our motion, that you would like me on behalf of my client to file an affidavit of some factual allegations that support what he has put in his motion and that due to the fact that we have alleged ineffective assistance of counsel that my client's prior counsel, Mr. Cotta, would need to be subpoenaed for that hearing. He is in juvenile court all day today, so we are unable to do that. So, I believe based on those two issues that we need to rectify that we have agreed to get a new date."

The court then indicated its concern was that Rule 604(d) requires a defendant to file an affidavit supporting allegations that are not supported by the record. The court indicated it believed an affidavit was necessary with regard to defendant's claims (1) he was under the influence of alcohol when he entered his guilty plea and (2) the strength of his defense had risen after his plea. The trial court noted this court wanted counsel to strictly comply with the requirements of Rule 604(d) on remand.

¶ 26 On June 25, 2025, Parrish filed defendant's affidavit. In the affidavit, defendant asserted:

> "6. On July 3, 2023, I answered ready for trial and the matter was set for Final Pre-Trial on July 14, 2023[,] and trial on July 18, 2023.
>
> 7. I spoke to my attorney, Nicholas M. Cotta, about my charge and the possible outcomes and consequences. At the time, I had applied for a job at Cook Medical in Canton, Illinois, but I was not able to be hired due to the active felony proceeding that appeared on my background check.

8. I received a phone call from Attorney Cotta on July 17, 2023, the day before my jury trial was to begin. I had been consuming alcohol that morning. I was advised that I should plead out to First Offender Drug Probation so that I could proceed to appeal the Motion to Suppress that was previously denied, and that if I did plead to First Offender Drug Probation, the charge would no longer show as pending on my background check, so I would be able to obtain employment and move forward with my life.

9. I appeared at the Fulton County Courthouse on the afternoon of July 17, 2023[,] at approximately 3:00 p.m. to review the plea/sentencing documentation. I met with Attorney Cotta for around five (5) minutes prior to the hearing and he summarized the documents for me.

10. On July 17, 2023, I signed a guilty plea to the above listed charge pursuant to fully negotiated disposition. I was sentenced in the above listed case and advised of appeal rights.

11. Shortly after I pled out, I realized that the aforementioned case still showed as pending on my background check, and therefore, I was still unable to accept employment as I desired."

¶ 27 On July 21, 2025, the trial court held a hearing on defendant's amended motion to withdraw his guilty plea. Defendant testified he was originally represented by Cotta, then Doubet, and then again by Cotta. He and Cotta met during the first period of representation, but he was unsure if they met during the second. He believed he and Cotta did talk on the phone. From the beginning of the case, he had asked for a jury trial but eventually pleaded guilty because his case had been continued multiple times and his life was "in shambles." He could not get a job because

of the active criminal proceeding. Prospective employers told him they could not hire him because of the possibility he might later be incarcerated.

¶ 28 Defendant testified he pleaded guilty the afternoon before his jury trial was scheduled to begin. He claimed he had consumed eight or nine beers before entering his plea, was under the influence of alcohol when entering his plea, and did not remember much about that day. He asserted he wanted a trial from the start of the case but had been threatened with jail time if he insisted on going to trial. As a result, defendant claimed he was pressured into pleading guilty.

¶ 29 When asked about his understanding of the plea agreement, defendant testified the charge had negatively affected him for five years, he wanted to move forward with his life, and he believed the charge would not affect him after his plea. However, after pleading guilty, he found himself in the same position as before the plea. He asserted it appeared to potential employers that he had just gotten into trouble with the law.

¶ 30 According to defendant, he vaguely remembered signing the guilty plea. When asked if he read the guilty plea form, he testified he reviewed some of it but was under the influence of alcohol and pressured to plead guilty.

¶ 31 The State then called Cotta. Cotta testified he was defendant's attorney in both this case and a companion misdemeanor traffic case at the time of defendant's guilty plea. At the beginning of this case, he and defendant talked in person and on the phone about the discovery. According to Cotta, he was very familiar with the case because he and defendant had spoken about the case "*ad nauseam*."

¶ 32 Cotta indicated defendant believed the methamphetamine should have been suppressed as the fruit of an illegal stop. However, the trial court had denied defendant's motion to suppress the evidence. After the court appointed him to represent defendant for the second time,

Cotta believed he and defendant only spoke in court and on the telephone and had the same conversation multiple times. After defendant's motion to suppress had been denied, Cotta said nothing else about the case required any in-person meetings between him and defendant, other than discussing whether to proceed to trial and the possible punishments defendant faced if convicted.

¶ 33 According to Cotta's testimony, he had worked as a public defender since September 2011 and had met with clients who he believed were under the influence of alcohol. On the day defendant entered his plea, Cotta believed he met with defendant for between 10 to 15 minutes at the courthouse before defendant entered his plea. Cotta did not believe defendant was under the influence of alcohol when he entered his plea. When asked if he explained the ramifications of the plea to defendant, Cotta said he had. He explained:

> "[W]hen I go forward with a *** first-offender methamphetamine probation plea, the main concern everybody always has is: Is this going to be a conviction? And specifically on the Sentencing Order, it says 'without Judgment of Conviction' on there that I make sure to go through with people. But then, I also go through all of the other requirements that the individual has as I have a duty to make sure they understand what they are obligating themselves to."

He believed defendant understood what was going on when he entered his guilty plea.

¶ 34 On cross-examination by Parrish, Cotta testified defendant had been offered first-time drug offender probation as early as 2019. Cotta advised defendant a judgment of conviction would not enter based on the plea agreement. As for their conversations before the plea, Cotta told defendant that at trial, the State's case against defendant would include the police officer's testimony and the video recording of the officer finding the methamphetamine on defendant's

person. In addition, counsel told defendant that he could be heard on the video talking about his ability to buy methamphetamine from other individuals. According to Cotta, he advised defendant there was little he could do for defendant if the case went to trial. Further, Cotta told defendant he would likely suffer a punishment worse than first-offender methamphetamine probation if he chose to go to trial.

¶ 35        After listening to the testimony and arguments presented by the parties, the trial court denied defendant's motion to withdraw his guilty plea. The court stated the record was replete with credible evidence defendant was not impaired when he met with Cotta and entered his guilty plea. In addition, the court indicated it asked defendant at the plea hearing whether he was satisfied with his attorney, whether he understood the plea agreement, and whether he was entering the guilty plea voluntarily. Defendant responded yes to these questions. In addition, when the court asked defendant if he had been threatened by anyone or promised anything by anyone to plead guilty, defendant said he had not.

¶ 36        On August 14, 2025, Parrish filed a motion to reconsider on defendant's behalf. On October 3, 2025, the trial court denied defendant's motion to reconsider, stating "that there has been no newly discovered evidence, no manifest errors in application of the law, and no significant changes in the controlling law since the decision was rendered on July 21, 2025."

¶ 37        This appeal followed.

¶ 38                                II. ANALYSIS

¶ 39        Defendant raises two issues on appeal challenging the denial of his motion to withdraw his guilty plea. He first asserts he did not knowingly, voluntarily, and intelligently plead guilty because he had a reasonable belief his plea would not result in a conviction or affect his ability to obtain employment. He also claims his postplea counsel's Illinois Supreme Court Rule

604(d) (eff. Apr. 15, 2024) certificate of compliance was both (1) facially invalid because counsel did not specifically state she made amendments to defendant's motion to withdraw his guilty plea necessary to adequately present any defects in the proceedings and (2) rebutted by the record in this case.

¶ 40                                    A. General Principles Regarding Guilty Pleas

¶ 41            "A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.' " *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). According to our supreme court:

> "Generally, due process requires that in order for a defendant to knowingly and voluntarily plead guilty, a defendant must be advised of the direct consequences of a guilty plea. [Citation.] As we have previously explained, a direct consequence of a guilty plea is one which has a definite, immediate and largely automatic effect on the range of a defendant's sentence. [Citation.] A trial court's obligation to ensure that a defendant understands the direct consequences of his plea traditionally encompasses those consequences that affect the defendant's sentence and other punishment that the circuit court may impose. [Citation.]
>
> In contrast, a defendant need not be advised by the trial court of the collateral consequences of a guilty plea. [Citation.] A collateral consequence is one which the circuit court has no authority to impose, and 'results from an action that may or may not be taken by an agency that the trial court does not control.' [Citation.] Examples of collateral consequences have included loss of employment, loss of voting rights, license suspension, and dishonorable discharge from the

military. [Citation.] These types of consequences lack the definite, immediate or automatic effect on the sentence imposed. As such, we have held that the court is not in a position to advise on all of these types of consequences, which are so numerous and unforeseeable, and that to require more of the court would place an unnecessary burden on it. [Citation.] Whether a consequence of a guilty plea is direct or collateral is a question of law which we review *de novo*." *People v. Hughes*, 2012 IL 112817, ¶¶ 35-36.

¶ 42 In addition, our supreme court has held "[a] defendant does not have an automatic right to withdraw [his] guilty plea, as '[a] plea of guilty is a grave act that is not reversible at the defendant's whim.' " *People v. Burge*, 2021 IL 125642, ¶ 37 (quoting *People v. Reed*, 2020 IL 124940, ¶ 47). Instead, "a defendant must establish a manifest injustice under the facts involved." *Id.*

¶ 43 "In order to withdraw his [guilty] plea, a defendant must establish a recognized basis for such withdrawal." *People v. Millsap*, 2022 IL App (4th) 210192, ¶ 17. "Withdrawal is appropriate where the plea was entered through a misapprehension of the facts or of the law or where there is doubt as to the guilt of the accused and justice would be better served through a trial." *Hughes*, 2012 IL 112817, ¶ 32.

¶ 44 We will not disturb a trial court's denial of a defendant's motion to withdraw his guilty plea unless the court abused its discretion. *People v. Glover*, 2017 IL App (4th) 160586, ¶ 29. A trial court abuses its discretion in denying a defendant's motion to withdraw his guilty plea if its decision was "arbitrary, fanciful, unreasonable, or no reasonable person would take the view adopted by the trial court." *People v. Delvillar*, 235 Ill. 2d 507, 519 (2009).

¶ 45 B. Compliance With Rule 604(d)

¶ 46        We first address defendant's contention this case should be remanded to the trial court because his postplea counsel failed to strictly comply with the requirements of Rule 604(d). Rule 604(d) is designed to protect a defendant's due process rights and eliminate unnecessary appeals. *People v. Shirley*, 181 Ill. 2d 359, 362 (1998). Pursuant to Rule 604(d), a defendant who entered a guilty plea but wants to appeal a judgment entered upon that plea must first file a motion to reconsider his sentence or a motion to withdraw his plea. Ill. S. Ct. R. 604(d) (eff. Apr. 15, 2024).

¶ 47        Rule 604(d) also places requirements on an attorney representing a defendant in that situation. Postplea counsel must consult with the defendant to ascertain the defendant's contentions of error with regard to both his sentence and plea, examine the trial court file and the report of proceedings for both the plea hearing and sentencing hearing, and make any amendments to the defendant's motion necessary to adequately present any defects in those proceedings to the trial court. *Id.*

¶ 48        Postplea counsel is also required to file a certificate of compliance certifying counsel completed those requirements. *Id.* Our supreme court has provided practitioners with a certification of compliance form, which provides, in part:

> "1. I have consulted with the Defendant in person, by mail, by phone or by electronic means to ascertain the defendant's contentions of error in the entry of the plea of guilty and in the sentence;
>
> 2. I have examined the trial court file and report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing; and
>
> 3. I have made any amendments to the motion necessary for the adequate presentation of any defects in those proceedings." Ill. S. Ct. Rs. Art. VI Forms

- 17 -

Appendix R. 604(d).

¶ 49    Before addressing defendant's current claims regarding his postplea counsel's compliance with Rule 604(d), we note this court previously granted defendant the remedy of a remand to the trial court because of his postplea counsel's initial failure to strictly comply with the requirements of Rule 604(d). See *People v. Carpentier*, 4-24-1052 (Dec. 4, 2024) (order). As a result, defendant had an additional opportunity to be heard on a motion pursuant to Rule 604(d), and his complaints in this appeal relate to his postplea counsel's conduct while the cause was on remand.

¶ 50    This court, in *People v. Allbritton*, 2026 IL App (4th) 250453-U, ¶ 28, recently held that " 'there is no *** requirement under Rule 604(d) that successive remands and rehearings will be ordered' " (quoting *Shirley*, 181 Ill. 2d at 371) after a defendant has been given the remedy of a remand based on his postplea counsel's failure to strictly comply with Rule 604(d), which afforded him an additional opportunity to be heard on his Rule 604(d) motion. Although this court's decision in *Allbritton* is not precedential (see Ill. S. Ct. R. 23(e)(1) (eff. June 3, 2025)), we find its reasoning persuasive and apply it here.

¶ 51    In *Allbritton*, this court stated it had already remanded the defendant's case to the trial court for strict compliance with Rule 604(d). *Id.* ¶ 2. While on remand, the defendant's court-appointed postplea counsel filed an amended motion to withdraw the defendant's guilty plea. *Id.* After a hearing, the trial court denied the amended motion. *Id.*

¶ 52    Once again, the defendant appealed, arguing he was entitled to another remand of his case to the trial court because his postplea counsel on remand again failed to strictly comply with Rule 604(d). *Id.* ¶ 3. According to the defendant, the record refuted his postplea counsel's certification on remand that he complied with his duty to make necessary amendments to the

defendant's motion to withdraw his guilty plea to adequately present his ineffective-assistance-of-counsel claims. *Id.* "More specifically, [the] defendant argue[d] remand counsel breached the above duty by 'failing to shape [his] claims into the legal framework necessary to assert ineffective assistance[ ] and failing to attach affidavits to support the claims that were based on information that was not present in the record.' " *Id.* ¶ 25.

¶ 53 Citing *Shirley*, 181 Ill. 2d 359 (1998), the State argued the defendant was not entitled to a third hearing because he " 'had a full and fair hearing on the merits of his motion to withdraw' and the motion [was] clearly meritless." *Id.* ¶ 26. The defendant responded that *Shirley* did not apply to the facts of his case because the attorney's failures in *Shirley* were technical, but his attorney's failures were substantive. *Id.* According to the defendant's argument, "it is impossible to ensure a 'full and fair' hearing absent strict compliance with the substance of Rule 604(d)." *Id.* The defendant made no argument on appeal that his motion to withdraw his guilty plea had potential merit. *Id.*

¶ 54 This court found it was "unnecessary to determine whether remand counsel's facially valid Rule 604(d) certificate [was] refuted by the record." *Id.* ¶ 31. According to this court:

"Even assuming, *arguendo*, remand counsel failed to strictly comply with Rule 604(d), as argued by [the] defendant, we nonetheless agree with the State that [the] defendant received a 'full and fair' second opportunity to present his motion to the trial court and a second remand for a third hearing would be 'an empty and wasteful formality' considering the overwhelming evidence of [the] defendant's guilt." *Id.* (quoting *Shirley*, 181 Ill. 2d at 370).

¶ 55 In addition, this court stated that our supreme court, in *Shirley*, held that the requirement of strict compliance with Rule 604(d) need not " 'be applied so mechanically as to

require Illinois courts to grant multiple remands and new hearings following the initial remand hearing.' " *Id.* ¶ 32 (quoting *Shirley*, 181 Ill. 2d at 369). According to this court, the defendant in *Allbritton,* like the defendant in *Shirley*, "received the full benefit of the strict compliance standard—*i.e.*, 'a full and fair second opportunity to present [his] motion' to the trial court." *Id.* ¶ 34 (quoting *Shirley*, 181 Ill. 2d at 369). The defendant's postplea counsel on remand filed an amended motion on the defendant's behalf, the defendant was able to testify about his claims, and his postplea counsel on remand argued the merits of the defendant's amended motion. *Id.* This court found the defendant "received a meaningful hearing on remand, unlike the situation in those cases requiring a successive remand, 'in which, for all practical purposes, no hearing occurred on [the initial] remand.' " *Id.* (quoting *People v. Tejada-Soto*, 2012 IL App (2d) 110188, ¶ 16).

¶ 56     Based on this court's reasoning in *Allbritton*, defendant in the case *sub judice* is not entitled to another remand based on his assertions his postplea counsel on remand did not strictly comply with Rule 604(d). We note defendant's postplea counsel on remand filed an amended motion on defendant's behalf and a new Rule 604(d) certificate. In addition, defendant received a meaningful hearing. Both defendant and his plea counsel testified at that hearing. Based on our review of the record, the trial court's hearing on defendant's amended motion to withdraw was not a "sham" hearing.

¶ 57     In addition, we note this court, in *Allbritton*, stated that ordering a successive remand under the circumstances of that case would have been " 'an empty and wasteful formality' (*Shirley*, 181 Ill. 2d at 370), as the evidence of [the] defendant's guilt [was] overwhelming." The same is true here. *Id.* ¶ 37.

¶ 58     The State would have been able to introduce evidence defendant was lawfully stopped by the police. A police officer searched defendant's person and found methamphetamine.

During the encounter with the police officer, defendant made multiple statements about his ability to provide information about acquiring methamphetamine from other individuals in Fulton County. Not only could the State have introduced the police officer's testimony regarding his interaction with defendant, the State could have also introduced a video recording of those interactions.

¶ 59          C. Postplea Counsel's Compliance With Rule 604(d) on Remand

¶ 60          Notwithstanding *Allbritton* and the reasons stated above for denying defendant another remand, we also hold defendant failed to establish another remand is necessary based on his assertions his postplea counsel's Rule 604(d) certificate on remand was facially invalid and rebutted by the record.

¶ 61                              1. *The Certificate on Its Face*

¶ 62          According to defendant, his postplea counsel's Rule 604(d) certificate of compliance is facially invalid. Our supreme court has stated it *requires* strict compliance with Rule 604(d)'s requirements. *Shirley*, 181 Ill. 2d at 362. "Strict compliance requires counsel to prepare a certificate that meets the content requirements of the rule and to file the certificate with the trial court." *In re H.L.*, 2015 IL 118529, ¶ 25. In this case, postplea counsel's certification indicated she "consulted with the Defendant *** in person and via telephone in order to ascertain his contentions of error in the entry of his guilty plea and sentencing" and "examined the trial court file and both the report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing of this cause." Defendant has no complaint regarding counsel's declarations on these points.

¶ 63          However, defendant does take issue with his attorney's declaration she "examined the prior filings by Counsel on behalf of the Defendant *** and made the necessary changes to

- 21 -

said petitions and filings." According to defendant, this proclamation by postplea counsel on remand does not strictly comply with the requirements of Rule 604(d) because counsel did not specifically state, "I have made any *amendments to* the motion necessary for the adequate presentation of any defects in those proceedings." (Emphasis added.) Ill. S. Ct. Rs. Art. VI Forms Appendix R. 604(d).

¶ 64 While defendant is correct that postplea counsel on remand did not use the exact language recommended by our supreme court in the form it provides for attorneys, our supreme court has ruled an attorney is not required to recite the language provided in the form verbatim as long as the content of the certificate is as specific as the rule requires. *People v. Gorss*, 2022 IL 126464, ¶ 29.

¶ 65 Defendant provided this court with no clear argument or analysis why counsel's declaration that she "made the necessary changes" is not sufficient to meet the third element of Rule 604(d)'s content requirement. Instead, without citing any authority, defendant asserted:

> "Rule 604(d)'s third requirement is not to amend prior filings. It is to take the defendant's claims and shape them so they are adequately presented. Post-plea counsel's certificate failed to comply with Rule 604(d) on its face, as the certificate itself does not assure this Court that the amended motion to withdraw the plea contains all of [defendant's] claims, as opposed to reshaping those in prior filings."

It is not entirely clear what point defendant is trying to make. However, it appears defendant is arguing postplea counsel is required to include any claim defendant wanted to pursue in the amended motion to withdraw his guilty plea and certify that she did so.

¶ 66 The plain language of Rule 604(d) does not require this. In addition, our supreme court, in *Gorss*, stated:

"Rule 604(d) requires that counsel certify three things: (1) that he consulted with the defendant to ascertain his contentions of error in both the sentence and guilty plea, (2) that he reviewed the common-law record and the report of proceedings from both the guilty plea and sentencing hearings, and (3) that he made any necessary amendments to the motion. See Ill. S. Ct. R. 604(d) (eff. July 1, 2017)."
*Id.* ¶ 24.

Based on our review of the content of postplea counsel's Rule 604(d) certificate, and absent any real argument or analysis from defendant, defendant has failed to establish the certificate was not facially valid. However, we would be remiss if we did not suggest the best practice is for postplea counsel to conform the Rule 604(d) certificate to the exact language set forth in the rule.

¶ 67                    2. *The Certificate and the Record*

¶ 68          Defendant's next contention is that the record rebuts the Rule 604(d) certificate of compliance filed by his postplea counsel on remand. According to defendant, neither his affidavit nor the evidence presented on remand at the hearing on his motion to withdraw his guilty plea addressed his claim that "[t]he strength of [his] case ha[d] risen since the time the plea ha[d] been entered." Defendant asserts this amounted to a substantive failure by his postplea counsel to comply with Rule 604(d), denying him a meaningful hearing on his motion to withdraw his guilty plea.

¶ 69          Rule 604(d) does state that when a motion to withdraw a guilty plea "is based on facts that do not appear of record it shall be supported by affidavit." Ill. S. Ct. R. 604(d) (eff. Apr. 15, 2024). While defense counsel attached defendant's affidavit to the amended motion, the affidavit did not provide any information regarding defendant's claim the strength of his case had risen after he entered his guilty plea. In addition, defendant's postplea counsel did not introduce

any evidence about this claim at the hearing on defendant's amended motion. As a result, relying on *People v. Winston*, 2020 IL App (2d) 180289, and *People v. Bridges*, 2017 IL App (2d) 150718, defendant argues his case should be remanded so that evidence could be presented regarding how the strength of his case rose after he pleaded guilty. We disagree.

¶ 70       We find the situation in this case distinguishable from both *Winston* and *Bridges*. In *Winston*, 2020 IL App (2d) 180289, ¶ 3, postplea counsel asserted in the trial court that it was questionable whether the State could prove the defendant's guilt based on the evidence it possessed. The trial court denied the defendant's motion to withdraw, explaining the defendant had not presented any objective evidence to support this claim. *Id.* ¶ 10. According to the trial court, " 'Most, if not all of the evidence testified at the hearing was available to the defendant, and she has failed to present any other witnesses or affidavits to show that there was favorable testimony supporting a reasonable doubt as to her guilt.' " *Id.*

¶ 71       The Second District agreed with the defendant's contention "that the record show[ed] that, contrary to the certificate, counsel did not amend the motion to withdraw to adequately present defects in the entry of the [defendant's] plea." *Id.* ¶ 15. Because defense counsel claimed the evidence was insufficient to prove the defendant's guilt beyond a reasonable doubt, "counsel was obligated to advance that argument in an amended motion, supported by affidavits from the witnesses whose testimony supposedly would have exonerated [the] defendant." *Id.* Therefore, the Second District vacated the denial of the defendant's motion to withdraw her plea and remanded the matter for further proceedings. *Id.* ¶ 1.

¶ 72       In *Bridges*, 2017 IL App (2d) 150718, ¶¶ 1-2, the defendant moved to withdraw his guilty plea, and postplea counsel filed an amended motion, alleging the defendant's plea was entered under duress. According to the amended motion, the defendant had learned acts of violence

were being perpetrated on his mother while his case was pending. *Id.* ¶ 2. The defendant was told by fellow inmates at the county jail that these acts were intended to send him a message. *Id.* As a result, the amended motion asserted the defendant's plea was involuntary because it was simply an attempt to prevent further violence against his mother. *Id.* The amended motion also alleged defendant's plea was not intelligently made because he was not receiving the appropriate medications to treat his bipolar disorder and attention-deficit/hyperactivity disorder, which affected his mental capabilities while he was in jail. *Id.* However, the defendant's postplea counsel did not support the amended motion with any affidavits and also did not present any evidence at a hearing on the amended motion. *Id.* ¶¶ 2-3.

¶ 73 After the trial court denied the defendant's motion to withdraw his guilty plea, the Second District held the record refuted the defendant's postplea counsel's Rule 604(d) certificate of compliance. *Id.* ¶ 9. In the Second District's opinion, the defendant's postplea counsel added new allegations to the defendant's motion to withdraw his plea that were not supported by the record. *Id.* As a result, for postplea counsel to fulfill her Rule 604(d) obligations, defense counsel needed to attach an affidavit substantiating these new allegations, which she failed to do. *Id.* The defendant's postplea counsel not only failed to attach an affidavit but also failed to present the defendant's testimony or any other evidence to support the claims in the motion to withdraw. *Id.* In addition to finding the defendant's postplea counsel failed to comply with Rule 604(d), the Second District also held that the hearing on the defendant's motion also failed to satisfy Rule 604(d). *Id.* ¶ 10. The Second District remanded the case to the trial court for further proceedings. *Id.* ¶ 12.

¶ 74 The situation in the case *sub judice* is distinguishable from both *Winston* and *Bridges*. In those two cases, each of the postplea attorneys had alleged a recognized basis for

withdrawing a guilty plea but failed to put forward evidence to support the alleged claim. As a result, pursuant to Rule 604(d), the cases were remanded so that evidence supporting those claims could be presented to the respective trial courts. Each of the respective trial courts would then determine whether the defendant before it should be allowed to withdraw his guilty plea.

¶ 75 In the case *sub judice*, defendant is correct his postplea counsel did not provide the trial court with any evidence to support defendant's claim the strength of his case had risen after the entry of his guilty plea. However, defendant has not provided this court with any authority to establish that a claim asserting a rise in the strength of a defendant's case since a plea is a recognized basis for withdrawing his guilty plea. Without such authority, we cannot conclude an assertion "[t]he strength of Defendant's case has risen since the time the plea has been entered" is equivalent to a claim "there is doubt as to the guilt of the accused and justice would be better served through a trial." *Hughes*, 2012 IL 112817, ¶ 32.

¶ 76 Therefore, this is not a situation where defense counsel failed to provide support for a recognized basis to withdraw defendant's plea. As a result, an order remanding this case for the presentation of evidence regarding a claim that is not a recognized basis for withdrawing defendant's plea would be an empty and wasteful formality. We decline to do so.

¶ 77 D. Ineffective Assistance of Plea Counsel

¶ 78 Finally, we turn to defendant's claim the trial court abused its discretion by denying his motion to withdraw his guilty plea. Defendant argues his plea was not knowing, voluntary, and intelligent because he did not understand the collateral consequences of his guilty plea. According to defendant, he did not understand these collateral consequences because his attorney was constitutionally ineffective.

¶ 79 "A collateral consequence is one which the circuit court has no authority to impose,

and 'results from an action that may or may not be taken by an agency that the trial court does not control.' " *Id.* ¶ 36 (quoting *Delvillar*, 235 Ill. 2d at 520). Generally speaking, a trial court does not have a duty to advise a defendant of the collateral consequences of his guilty plea. *Id.* However, a defendant's attorney does have a duty not to affirmatively misadvise a defendant about the collateral consequences of entering a guilty plea. See *People v. Boyd*, 2018 IL App (5th) 140556, ¶¶ 20-23.

¶ 80        Defendant asserts his plea counsel did not provide him with an accurate description of the effect his guilty plea would have on the charged offense in this case. To succeed on a claim of ineffective assistance of counsel, a defendant must show his attorney's representation fell below an objective standard of reasonableness and a reasonable probability exists that, but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984). To establish prejudice after entering a guilty plea, a defendant is required to show a reasonable probability exists he would not have pleaded guilty and would have insisted on going to trial but for his attorney's errors. *People v. Rissley*, 206 Ill. 2d 403, 457 (2003).

¶ 81        A defendant may not simply make a bare allegation he would not have pleaded guilty to establish he was prejudiced by his counsel's performance. *People v. Brown*, 2017 IL 121681, ¶ 26. Instead, a defendant must convince the court that not pleading guilty would have been a rational decision under the circumstances of his case. *Id.* ¶¶ 40-41. A defendant also bears the burden of establishing that objective circumstances existed when he entered his guilty plea that justified any mistaken impression he had regarding the plea. *People v. Davis*, 145 Ill. 2d 240, 244 (1991).

¶ 82        According to defendant's affidavit, his plea counsel told him the criminal charge against him would no longer appear as pending on a background check if he took the deal offered

by the State for first-offender drug probation. At a hearing on July 21, 2025, defendant stated it was his understanding that the guilty plea would not affect him going forward. When asked to explain, defendant stated, "I didn't think that after I pled out that it would be on my background as an actual charge and, you know, look worse than it actually should have, you know, five years after the fact."

¶ 83　　　At the July 21, 2025, hearing on defendant's motion to withdraw his guilty plea, defendant's plea counsel did not specifically testify whether he told defendant the charge would appear as pending during the term of defendant's probation. However, plea counsel did testify generally that he explained to defendant what he would be obligated to do if he pleaded guilty, what things meant in terms of the plea, and what the ramifications of the plea would be.

¶ 84　　　According to plea counsel's testimony, the main concern most individuals have when entering a first-offender methamphetamine probation plea is whether the individual will have a conviction on his record. Plea counsel stated he always makes sure he shows a defendant in this situation that the sentencing order states " 'without Judgment of Conviction.' " In addition, plea counsel indicated he also always makes sure a defendant understands his obligations under the plea agreement. Plea counsel testified he went over these things with defendant and believed defendant understood what he told him.

¶ 85　　　Based on the record in this case, even assuming, *arguendo*, defense counsel mistakenly told defendant the charge in this case would not appear as pending during the period of defendant's probation, defendant cannot establish he was prejudiced by plea counsel's mistake. As stated above, for defendant to establish he was prejudiced by his plea counsel's mistake, defendant would have to establish that rejecting the plea deal would have been a rational decision based on the circumstances in this case. Defendant cannot do so here.

¶ 86 The State had overwhelming evidence against defendant. After defendant was stopped by the police in this case, a police officer searched his person and found methamphetamine. Defendant also made multiple statements to the police officer about his ability to provide information about acquiring methamphetamine from individuals in Fulton County. The State would have been able to present the testimony of the police officer, as well as a video recording of the officer's interactions with defendant.

¶ 87 While defendant's acceptance of the plea deal resulted in the charge appearing as pending during his probationary term, the charge also would have remained pending while defendant awaited trial. In addition, based on the overwhelming evidence against defendant, a rational trier of fact could have convicted defendant of the charged offense. Defendant presumably would then have a conviction on his record for the remainder of his life, as opposed to a pending charge while he was on probation.

¶ 88 Although defendant suggests the trial court erred when it denied his motion to suppress the evidence against him in this case, he provides no real argument or analysis why the trial court would have changed its mind and suppressed the evidence during his trial or why this court would have held the trial court erred in denying his motion to suppress. It is not the function of this court to make arguments for an appellant, and we decline to do so.

¶ 89 Because defendant failed to establish rejecting the plea deal in this case would have been a rational decision, he cannot establish he was prejudiced by his plea counsel's alleged ineffective assistance. Therefore, his ineffective assistance of counsel claim fails.

¶ 90 III. CONCLUSION

¶ 91 For the reasons stated, we affirm the denial of defendant's motion to withdraw his guilty plea.

¶ 92        Affirmed.